Good morning. Monica Knox on behalf of Appellant Mr. Klassy. The issues before this court on this appeal are all sentencing issues. There are four of them. The government concedes that the district court made a mistake in the base offense level and so it has to go back for remand. We argue that the district court improperly imposed three enhancements because there is not, there either is not evidence in the record that supports them and or the district court failed to make a resolution of hotly disputed factual disputes. How is his, it was hotly disputed and he had all of that before him, but what is, how is there clear error here on the part of the district court in determining I'm going to accept these arguments and not these? Well, let's talk about the loss issue as an example, okay? The main issue about loss centers on, it's whether it's going to be over 400,000 or under 400,000, okay? And it centers on these insurance proceeds that Klassy was paid for a fire that did damage to his business. The government produced three checks from the Hartford Insurance Company that were payable to indirectly to Klassy and they amounted to $130,000. There was one for $20,000, one for $30,000 and one for $80,000. The gut, there is absolutely no dispute in this record that Klassy declared $49,000 in bankruptcy in insurance proceeds. There's no dispute about that. The government's own witness testifies to that. It's in the bankruptcy schedule that's there, okay? So the issue becomes whether that $49,000 is part of the 130 or is an addition to the 130. Well, there's absolutely no evidence that it's an addition. The government argued at sentencing that it was an addition and they argue on appeal that it was an addition. There is no evidence of that. The evidence is that there are three checks and they add up to $130,000. And he declared $49,000. There's no evidence that that $49,000 was in addition to 130. And, in fact, it makes no sense that the government would have additional proof and didn't produce it. And the district court never made a finding about it, never made a finding about whether that $49,000 was an addition to or part of. And without that $49,000, the loss does not go over $400,000. There's also no dispute about that in its intended loss, that it doesn't go over $400,000. And so what we have is a lack of evidence that the government produced an assertion without evidence that the government produced a declaration from the bankruptcy trustee. And in that declaration, the bankruptcy trustee says that it is his understanding that there were these three checks. And then he says that he uses the word additional. He talks about the $49,000 that was declared and he says that it was additional. But he doesn't say how he got that. He doesn't say he's ever seen any evidence. He doesn't even say he ever saw the evidence of the three checks. He just says it's his understanding that there were three checks. What this court's case law is, is that while you can rely on hearsay, and so that the district court has to know what the source of that hearsay is so the district court can evaluate its reliability. We have noted that had the trustee said in the declaration that he subpoenaed the records from the Hartford, and the Hartford produced, you know, four checks that came out to, that showed the $49,000 was an additional check to the 133 that he mentions, then that would be sufficient because it sets forth. It's not just an assertion without any evidentiary support for it. It would set forth the basis of the trustee's knowledge. But the trustee doesn't even, all the trustee says is it's my understanding. And what the record is highly suggestive of is that the declaration was drafted by the government, which is not improper and I'm not suggesting in any way it is, but it was drafted by the government. The government for some reason, unknown to us because they've never said why, believes that $49,000 is in addition to, so gave that understanding to the trustee who puts it in a declaration and then the government relies on a declaration. And the bottom line is there's nobody who's ever put any evidence forward about the $49,000 being in addition to the $130,000. There's evidence that supports $130,000 and there's undisputed evidence that he declared $49,000 and the district court did not make a finding on it. And that type of error is repeated with the other enhancements that are at issue, too. There's an enhancement that's given for more than ten victims. In order for there to be more than ten victims of the bankruptcy fraud, there has to be more than ten creditors who got less money than they otherwise would have gotten because of Mr. Classy's fraud. And there is an evidence that supports that. The government asserts that the per... Let me ask you. Usually, determining the number of victims is an in-counting process, but here it's tied up with the loss because of the unsecured creditors. I mean, they're sort of intertwined. If you don't have the loss, you don't have the right number of victims to meet the ten. But at the time of sentencing, you haven't really had a finalization of the distribution on this estate, so the district court makes findings as to how it would get to the numbers. Why is that clear error? Well, to start with, with all due respect, Your Honor, the district court did not make a finding as to how it would get to there. The district court merely adopted the PSR, and the PSR just asserts it. The PSR, and when the objections were filed to the PSR saying there aren't ten victims, the PSR responded to the objection saying, well, that was her understanding based on what the government told her that the government would have the evidence of sentencing. And then the government did not produce any calculation that would show in order to get to more than ten victims, you have to get to the non-priority unsecured creditors. Correct. Okay. Because of the way that, and nobody did any of this in district court. I've done it in my brief. But in order to get to the non-priority unsecured creditors, you would have to have more money in the bankruptcy estate than was necessary to pay the priority unsecured creditors. And wasn't there testimony to the effect that there was? No. No. With all due respect, there was not. If you look, I have done the calculations with citations to every calculation I've made. There's a citation to the excerpts of record, which was the record before the district court. And I have cited, every time I put a number down, I have cited to the page that supports that. And I have gone through exactly what money would have been in the state absent classes. And they've got to understand that for victims it has to be actual loss. Right. And that's part of the problem with what the district court failed to do, is because loss was determined by intended loss, there was never a calculation for actual loss. But for victims, it has to be actual loss. And I've gone through the whole thing, and I've shown that there wasn't even enough money, even when you put in everything that could go into that estate, there wasn't enough money to even satisfy the priority unsecured creditors. You were never going to get, no matter what, if Classy had been entirely honest about everything, there was never going to be a penny that would allow you to reach the non-priority unsecured creditors. Do you want to reserve the remaining time? Yes, please. Good morning. May it please the Court. Matthew Stegman for the United States. Your Honors, I'm going to address the three issues this morning, that the loss amount was over $400,000, as correctly found by the district court, that there were more than 10 victims, as found by the district court, and that there was at least one other participant in the fraud scheme, as found by the district court. And if I may, first, I'd like to address the issue of 10 or more victims. First of all, the district court found that there were more than 10 victims and stated, in this case, there were at least 13 unsecured creditors. Because of the defendant's fraud and concealment, money that could have been paid to the unsecured creditors was not. Now, the defense expert that testified at sentencing testified that there would be no money to pay any of the unsecured creditors. I believe 13, any of the 13 unsecured creditors, no money. And he grudgingly admitted that there were, in fact, fees and costs and attorney's fees that were incurred because of the defendant's fraud. And the judge, the district court judge, who heard all the evidence at trial, heard all the evidence at sentencing, read the probation report, found that because of the defendant's fraud and concealment, monies that could have been given to those parties was not, because it had to be spent for attorney's fees, costs, and other factors. The district court judge made a specific factual finding that because of the fraud, there was no money available. Ginsburg. Okay, but what's that based on? In other words, there has to be a foundation for that. So what is the amount? In other words, what is the actual amount? In other words, you have to come to some number where counsel says, well, really, there never would be enough. And you say, well, there was some expat, but if you took out the fees, then there would be enough. So what's the amount? That's the question. Well, the defense expert testified that there would be no money available. And let me also point out, even if there was a reduction, even if there was some money available to the unsecured creditors, if they received a dollar less each, they would have each been victimized. And the court indicated that. But how do we know that? I mean, in other words, my problem or concern about the case from the outset really focused on this because of the difference between intended versus actual loss. And I agree. If you could actually show an actual loss, you have enough people. So it all focuses on the loss. Do you agree with that? Well, I would also argue that this is a concealment case and that each of these victims had property concealed from them, and that the defense expert – again, it comes back to the defense expert's testimony who admitted there would be no money available to pay any of the creditors, and a finding from the district court, a factual finding from the district court that that was because of the defendant's fraud, and I'll point out that the defense expert admitted that he was not including the $205,000 that the defendant concealed and spent, and so there's another $205,000. But see, the problem with saying the fraud is that if you have the secured creditors go first and you say, well, it wouldn't be enough money for anybody, that doesn't really tell me kind of where is the dividing line between the amount of the fraud and if – but for the fraud, I might have paid off the secured creditors because they would get the priority, and then I'd have these tailing creditors. How do I know without some numbers, other than to say, well, there's fees and expenses we should back out of here, how do I know where the dividing line is as a matter of sufficient to sustain a sentence based on it? Because the bankruptcy case had not been completed. I don't think we know what – we have no way of knowing what the numbers were. But we do know that the defendant concealed $205,000 in addition to all of the other assets. We know that that was money that was spent. That was money that wouldn't go to the creditors. And if the creditors were to be deprived of even $1, they would have been victims in this case. Sotomayor, can you tell me what your calculation is on numbers that would show that – but for the fraud, that there still would have been a deprivation of the unsecured creditors? Is there – I mean, the problem is I keep hearing the principles, but not the numbers. I understand. And you're saying, well, maybe you can't have any numbers because there's – the bankruptcy hadn't been completed. I think that's the case, that the bankruptcy hadn't been completed. But I think we need to look at the economic reality. Does that excuse compliance with the guidelines on that point? Well, I don't think – I don't think the Court didn't comply with the guidelines. I think that we need to look at the economic reality. And I don't think the defendant should get a free pass because the bankruptcy case had not been completed. The judge, just as with the loss determination, the judge does his best to determine what the loss amount is, the number of victims. And I think in this case, given the defense testimony, that there was no money available, and after hearing all of the evidence in the case and knowing that $205,000 was gone, that the judge was reasonable, it was not clear error for the judge to find that there was money that would have been paid to the unsecured creditors but wasn't. Well, do you think that the – do you think you can equate the amount to be discharged with an actual loss? Is there a basis for that? There is, Your Honor. And that would be as to the loss amount. First of all, the defendant argues and spends a good deal of time on this $49,000. And I'll point out to the Court that the probation officer, the government argued, the probation officer also recommended to the Court, and the judge found that there were two ways to compute the loss amount in this case. And one of those ways was the amount to be discharged. Now – Was that the intended loss or the actual loss? That would be the intended loss. Okay. But we now have to go to actual loss. So my question was, if you go to actual loss and then we know some of this was recovered, like there's supposed to be a couple hundred thousand, what would be the actual loss? Because intended loss is okay for part of this, but what about actual loss? I would argue to the Court that the actual loss was every dime that was owed to the unsecured creditors, because in this case – But what was – I'm having trouble with that, because in many cases the unsecured creditors are left out in the cold. Well, okay. So that doesn't really compute. Let me say this. In regards to this specific case, this bankruptcy case, the defendant had no reason. The only reason he filed for bankruptcy was to obstruct the family law court. He owed a judgment to his ex-wife. And I think it's instructive to look at the declaration of the attorney in the family court to show the intent, what the defendant was thinking when he filed bankruptcy. And he filed bankruptcy in June of 2003, and I think it's important to keep that date in mind when you hear this. The – in the family court, he was ordered to pay spousal support in 2002, and he failed to pay anything until he was incarcerated in 2003. He disobeyed three court discovery orders in 2002 until a default judgment was entered. Between 2002 and 2006, it failed to appear at six debtor's exams, and five bench warrants were issued. He was arrested and spent time in jail a number of times. So throughout all of this, he then files bankruptcy. His debts, his listed liabilities were $1.3 million, just over $1.3 million. His assets were just over $1.3 million. There was no reason for him to file bankruptcy other than for the automatic stay and to discharge the amount of money owed to his creditors. And Janet Oliver, the ex-wife, she was, in fact, an unsecured creditor. So it was clear, I think it was clear to the district court, and it's clear that the defendant only filed bankruptcy for the purpose of using the bankruptcy court as a tool to avoid payment of the money he owed. And so I think this ---- Could you just comment briefly on the Showalter case? Because there, it was kind of a quantum of evidence problem, and we said that this kind of evidence wouldn't really rise to that quantum. Why is that different? I think that was, if I recall correctly, that was bank tellers who told the prosecutor and the probation officer what the defendant had said in regards to holding the gun to them, and the defendant disputed that he said anything like that. And the district court there didn't address whether or not the statement was made, but merely whether or not the threat was a true threat or was a threat on the life of the tellers, and skipped the factual issue. Here in this case, the judge made the factual finding that, in fact, the loss amount was over $400,000 under either prong, and he made a factual finding, and that is on page 152 of the JNS in the excerpts of record. And he made a factual finding that there were, in fact, more than 10 victims in this case because the defendant's fraud used up all the money available to pay the creditors. And the judge in this case made a factual finding that he, in fact, did use others to commit the crime, and that those others, and if the court would like that. That's not the Showalter I was talking about. I was talking about the fraud case, but that's not the bank teller, got your case. But that's okay. Any other questions? Was there any evidence introduced as to what the amount of the claim of the three priority creditors was? Yes. That would be an indication, if they were very large, that the others wouldn't get anything. Your Honor, I do have that, and that is in Exhibit 1A that is in the excerpts of record. And if I could have a moment to flip to that. The priority claims totaled $297,000. And those are unsecured priority claims, $297,000. And the unsecured non-priority claims were $381,457. And that is on the summary of schedules in Exhibit 1A. Thank you. So if the amount available for distribution did not exceed the amount of the three priority claims, the other non-priority people would get nothing. That's true. Although, I would argue again that the defendant's assets just about equaled his liabilities. But the judge made a factual finding that but for this fraud, there was no money available to pay anybody. Thank you. Thank you. I think you have a few moments. Ms. Knox. The government here today continues to do what it did in the district court and what it's done in its brief, which is to paint with this really broad brush that has no connection with the evidence before the court. On pages 25 and 26 of my brief, I went through very clear calculations with citations to the record, showing exactly what the priority creditors would get, which is a lot more than what the government just said. And the reason it's a lot more than what the government said is the government is using the bankruptcy schedules. At the time those schedules were filed, some of the debts weren't known. For example, he owed over $125,000 in taxes. There's zero on the schedules because at the time the IRS and the Franchise Tax Board hadn't said what he owed. The government also can't use those schedules because they're just comparing assets to debts. His assets listed the fair market value of real property, and there's a fair amount of real property in this bankruptcy. So it lists like $453,000 for the fair market value of the weed property. Well, there were mortgages, i.e., secured creditors, that held liens as to $418,000 of that. The asset to Classy, to the bankruptcy court, was not 400 that would ever be available to unsecured creditors, was nowhere near $453,000. And it's what the government continues to do. We have calculations that shows that there would never, absent what Classy, absent any fraud, there would never have been a single penny for the non-priority unsecured creditors. And without them, you cannot get to more than 10 victims. But in the end, I would just ask the court to send it back. Thank you. The case just argued, United States v. Classy, is submitted.  Thank you.
judges: Hug, Nelson D. W., McKeown